**In re Evan A. BOGOSIAN, Debtor.**

**Bankruptcy No. 89–10870.**

United States Bankruptcy Court, D. Rhode Island.

April 19, 1990.

As Corrected April 25, 1990.

John F. Cullen, George J. Nader, Cullen & Resnick Charlestown Navy Yard, Boston, Mass., for Evan Bogosian.

Robert D. Wieck, Richard L. Gemma, Adler Pollock & Sheehan Inc., Providence, R.I., for Rhode Island Hosp. Trust Nat. Bank.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 5, 1989, January 22, 26 and March 12, 13, and 14, 1990, on Rhode Island Hospital Trust National Bank's Motion for Relief from Stay, and for leave to foreclose upon the debtor's property located at Bokar Street, Warwick, Rhode Island. The subject property consists of an eight lot residential parcel with subdivision approval, and an additional lot containing a single family home.

To put it mildly, the trial of this proceeding, has been unnecessarily protracted, so to avoid further delay and to give the parties the earliest disposition possible, in the circumstances, we make the following abbreviated findings of fact and conclusions of law, addressing what we believe are the dispositive issues.

## FINDINGS OF FACT

1. That Evan Bogosian and the Bank entered into two loan transactions, the first, a *demand* note and mortgage dated December 19, 1986, in the amount of $380,-000, and a second *term* note and mortgage dated November 17, 1987, in the amount of $100,000. Also in November 1987, the Bank granted a letter of credit to the City of Warwick on behalf of the debtor in the amount of $86,000.

2. That as of February 7, 1990, the total amount due Hospital Trust on both loans by Evan Bogosian was $528,710.

3. That Henry Kates, Esq., Bogosian's attorney at the November 1987 closing, requested that the December, 1986 demand note for $380,000 be replaced by a term note, so that its maturity date would coincide with the November 1987 term note. Mr. Kates also was concerned that the demand note did not provide for a "grace period" or any restriction on the Bank's ability to call the note prior to the maturity date of the "development" note, and that it would be in Ms. Bogosian's best interest to have a specific term in the $380,000 loan document. In accordance with Mr. Kate's request, the Bank prepared a substitute note which the debtor executed at the November 1987 closing, and which was made payable within 879 days from December 19, 1986, or on or about May 24, 1989.

4. The testimony elicited from Robert Baggesen, a Vice President of the Bank, and Henry Kates (Bogosian's own attorney at the 1987 closing) fails to support the allegation of a side agreement between her and Baggesen, that the Bank promised not to call the note until the subdivision was completed and sold. Accordingly, based on the entire record, including the testimony of the debtor, we reject Bogosian's contention that such an oral agreement existed.

5. The record does not support a finding that the debtor's delay in performance was caused by any conduct of Hospital Trust, and that argument by the debtor is also rejected.

6. The debtor has failed to show that Hospital Trust acted in bad faith by its decision not to extend the letter of credit for a third time. Moreover, we find no obligation (legal or equitable) on the part of Hospital Trust to extend the letter of credit, and conclude that the debtor has failed to sustain her burden of proof on this issue.

7. That, considering all of the valuation evidence, including exhibits K and M, we find the fair market value of the improved lot and house to be at least $200,000. Mr. Coyle's opinion of value ($155,000) is weakened, inter alia, by; the other evidence as to the extensive improvements made to the property;[1] the fact that Coyle did not have the benefit of an interior inspection; and that the Bank had had a previous appraisal done in September, 1987 in the amount of $225,000 (*see* Exhibit O).

8. That in his analysis of the market value of the eight remaining lots, Mr. Coyle penalized the subject property excessively by the imposition of "entrepreneurial," "sales and promotional," and other costs of holding and disposing of the property, in the total amount of $190,156. We find, in the circumstances, that expenses this heavy are inappropriate, and that Mr. Coyle's estimate of value should be increased by at least 75% of what he subtracted as expenses. This produces a revised bottom line of $490,617, per Coyle's own appraisal, as adjusted, above.

9. That the market value of the eight lots, therefore, is approximately $490,000.

10. While the record does not support a finding that the debtor filed her Chapter 11 petition in bad faith, it is also a fact that she has not presented evidence of a proposed plan of reorganization, or that a reorganization is in prospect.

## CONCLUSIONS OF LAW

1. Debtor's argument that the December 1986 Hospital Trust mortgage is invalid is rejected, on the merits, and furthermore,

---

1. Although we agree in part with the Bank's argument that said improvements do not necessarily enhance the market value of the property to the full amount of the cost of said improvements, we cannot agree that they add little or nothing to market value.

based on the testimony of her own lawyer (Kates), we rule that she is estopped from asserting this defense.

2. The debtor also fails as to her contention that the two notes were not in default when called by the Bank. Furthermore, we hold that when the December 1986 demand note was substituted for the term note, that Kates was acting with both actual and apparent authority as attorney for Bogosian.

3. The debtor has failed to establish that the delay in timely completing the project was due to any impossibility of performance, or that such delay is attributable to the Bank.

4. That, as a matter of law, and consistent with our rulings at trial, we reject as irrelevant to this proceeding, the debtor's contention that Hospital Trust's decision-making judgment was influenced by other Bogosian/Woloohojian dealings with the Bank.

5. We find no evidence of any exercise of control by the Bank which would support a claim for equitable subordination under § 510(c).

6. We reject, because it is without merit, debtor's argument that Hospital Trust's lien is invalid under Uniform Commercial Code §§ 1–203 and 1–208. In making this ruling, we reemphasize our previous finding that the debtor has failed to demonstrate any bad faith conduct on the part of the Bank in its dealings with the debtor and the loans in question.

7. As to the parol evidence issue, in light of our bench rulings during the trial, we will allow the debtor's evidence of an alleged oral agreement to remain in the record, but conclude, even with such evidence before us, that no separate oral agreement existed between Evan Bogosian, and Robert Baggesen on behalf of the Bank.

8. We also conclude that the substitute note was intended merely to alter the payment terms of Bogosian's indebtedness and to alleviate Kates' concerns over the 1986 demand note.[2] In addition, Bogosian has failed to sustain her contention that the parties intended to extinguish or cancel the underlying indebtedness.[3] Accordingly, we hold that Hospital Trust's 1986 and 1987 mortgages are valid and enforceable.[4]

9. On the issue of valuation, we conclude that a reasonable equity cushion presently exists. This ruling is based on the fact that the Bank is owed approximately $528,700 and that, together with our finding that the market value of the property is $690,600, there is presently approximately $162,000 in equity in the subject property.

10. Last but not least, however, the debtor has failed to establish that the likelihood of a successful reorganization is in prospect. In fact, she produced no evidence as to this element of her case.

Based on the above findings and conclusions, it is ORDERED that:

1. Rhode Island Hospital Trust National Bank's Motion for Relief from Stay is DENIED, without prejudice. However, in light of the judicial time already expended, as well as the legal costs that have been incurred by the parties, and to serve the interests of justice and to achieve compli-

---

2. A holder may execute a "renewal note" which merely extends the time for payment, and does not discharge the original underlying obligation. *Farmers Union Oil Co. v. Fladeland,* 178 N.W.2d 254, 257 (Minn.1970). The renewal note evidences "the same debt by a new promise." *Id. See Mid–Eastern Electronics, Inc. v. First Nat. Bank of So. Md.,* 455 F.2d 141, 145 (4th Cir. 1970) (old note surrendered when new note issued does not rebut inference that original indebtedness was not extinguished).

3. Debtor has burden of proof to show holder's intentional discharge of original obligation.

*Hubbard Realty Co. v. First Nat'l. Bank of Pikeville,* 704 F.2d 733, 736 (4th Cir.1983).

4. Because a renewal or substitute note is not intended to extinguish the original obligation, a security agreement that encompasses the original obligation also secures the new note. *See Bank of Austin v. Barnett,* 549 S.W.2d 428, 430 (Tex.Civ.App.1977); *In re Cantrill Const. Co.,* 418 F.2d 705, 707–708 (6th Cir.1969) *cert. denied, Carter v. Commercial Bank of Middlesboro, Ky.,* 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970).

ance with the intent and spirit of the Bankruptcy Code, it is also ORDERED, pursuant to our § 105 power, that the debtor is directed to file her disclosure statement and plan of reorganization within thirty days [5] from the date of this Order.

2. It is also ORDERED that Counts I–V of the debtor's Complaint in Adversary Proceeding No. 90–1006 are dismissed, with prejudice.[6]

Enter Judgment accordingly.

---

5. This short deadline is a result of the debtor's own doing, in unnecessarily and unreasonably prolonging the trial of this proceeding. The dilatory tactics employed on the debtor's side have already bought her much more time than was intended by the drafters of the law under which she seeks protection.

6. The parties have stipulated that the record in this proceeding be available to the Court in order to dispose of issues raised in A.P. 90–1007, where appropriate.